```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/3/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

RAUL SALDANA VILLANUEVA, et al.,                      :                    16 Civ. 8782 (AJN) (RWL)

                                                     :

                                                     :

                         Plaintiff(s),               :         **REPORT AND RECOMMENDATION**

                                                     :         **TO HON. ALISON J. NATHAN, USDJ:**

             - against -                              :         <u>**DAMAGES INQUEST**</u>

                                                     :

179 THIRD AVENUE REST INC. (d/b/a                    :

MUMBLES), 603 SECOND AVE CORP.                       :

(d/b/a/ BENJAMIN'S RESTAURANT &                      :

BAR), DAVID FELDMAN, MICHAEL                         :

FELDMAN, MARTIN MARKOWITZ,                           :

ROBIN GROSSMAN, JOSEPH PRESS,                        :

and ROBERT PRESS,                                    :

                                                     :

                         Defendants.                 :

---------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Plaintiffs, a group of fourteen former restaurant employees, seek compensatory

damages, liquidated damages, statutory penalties, costs, and attorneys' fees from 179

Third Avenue Rest Inc. and 603 Second Ave Corp. (collectively "Defendants") for

violations of the Fair Labor Standards Act (the "FLSA") and New York Labor Law (the

"NYLL"). Defendants defaulted on the issue of liability, and the matter has been referred

to the undersigned for an inquest on Plaintiffs' damages. Following a review of Plaintiffs'

submissions and the record in this matter, I recommend awarding Plaintiffs damages,

pre-judgment interest, statutory penalties, attorneys' fees and costs as set forth below.

<b>Procedural Background</b>

      This action commenced with filing of the Complaint on November 14, 2016. (Dkt.

2.) Affidavits of service of process on all Defendants were filed on January 4, 2017. (Dkt.

1

19-25.)  An amended complaint was filed on September 11, 2017.  (Dkt. 65, the "Amended Complaint".)  Plaintiff filed affidavits of service of the Amended Complaint only for the two corporate Defendants.  (Dkt. 100, 101.)  The only Defendant who appeared in the action was David Feldman, with whom the Plaintiffs entered into a settlement agreement.  (Dkt. 102, 111.)  On July 19, 2018, the Clerk of Court entered default by the two corporate Defendants.  (Dkt. 106, 107.)  Plaintiffs moved for default judgment against the corporate Defendants on February 22, 2019.  (Dkt. 120, 121.)  A few days later, Plaintiffs filed proof of service of the motion for default judgment.  (Dkt. 123.)  On September 30, 2019, the Court granted default judgment in favor of Plaintiffs against the corporate Defendants (Dkt. 127), after which the matter was referred to the undersigned for an inquest on damages.  (Dkt. 128.)

This Court then issued a scheduling order for inquest submissions.  (Dkt. 129.) Plaintiffs filed Proposed Findings of Fact and Conclusions of Law ("FFCL") on January 2, 2020 along with supporting sworn declarations from each Plaintiff and Plaintiff's Counsel.[1] (Dkt. 134, 135.)  Counsel's declaration included a detailed spreadsheet of damages calculations (Dkt. 135-13, the "Damages Schedule").  Defendants did not file a response.

---

[1] The individual declarations are those of Michael Faillace, Esq. (Dkt. 135, "Faillace Decl."); Raul Saldana Villanueva (Dkt. 135-14, "Villanueva Decl."); Andres Zamora Ramirez (Dkt. 135-15, "Ramirez Decl."); Bladimir Vazquez Solis (Dkt. 135-16, "Vazquez Solis Decl."); Dionisio Florencio Perez Marana (Dkt. 135-17, "Marana Decl."), Efrain Rosas (Dkt. 135-18, "Rosas Decl."); Esteban Herrera (Dkt. 135-19, "Herrera Decl."); Francisco Rosendo (Dkt. 135-20, "Rosendo Decl."); George Sanchez Galindo (Dkt. 135-21, "Galindo Decl."); Jesus Herrera (Dkt. 135-22, "Herrera Decl."); Jose Patricio Sanchez Rojas (Dkt. 135-23, "Rojas Decl."); Julio Alvarez Vargas (Dkt. 135-24, "Vargas Decl."); Luis Fernando Tlaltepec-Perez (Dkt. 135-25, "Tlaltepec-Perez Decl."); Miguel Cuautle Ocelotl (Dkt. 135-26, "Ocelotl Decl."); Zeferino Baltazar (Dkt. 135-27, "Baltazar Decl.").

Following a delay due to the COVID-19 pandemic, the Court held an inquest hearing by remote video-teleconference on July 21 and 23, 2020.[2]

Following the hearing, the Court asked Plaintiffs to submit a revised damages schedule making certain revisions consistent with the analysis below. Plaintiffs submitted multiple revised damages schedules, each of which contained errors and required further revision. On August 5, 2020, Plaintiffs submitted their most recent revised damages schedule (Dkt. 149-2, the "Revised Damages Schedule").

### Factual Background

Because liability has already been adjudicated, the Court will only briefly recount the relevant factual background.[3]

Plaintiffs worked for Defendants in a variety of positions at either one of two restaurants: Mumbles, located at 179 Third Avenue ("Mumbles"), and Benjamin's Restaurant & Bar ("Benjamin's"), located at 603 Second Avenue. Defendants engaged in certain practices common to most or all of the Plaintiffs. For instance, Defendants paid each Plaintiff on a semi-monthly basis in a combination of checks and cash. Defendants

---

[2] To assess whether the plaintiff has articulated a sufficient basis for damages, a court has the discretion (but is not required) to hold a hearing to determine the amount of damages that should be awarded on a default. *See* Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Services., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989). A hearing is required, however, where plaintiffs have submitted declarations that contain inconsistencies or raise credibility issues. *See Hernandez Gomez v. 4 Runners, Inc.* 769 Fed. App'x 1, 3-4 (2d Cir. 2019).

[3] As the Court will address below, where, as here, a defendant has defaulted on liability, all the facts alleged in the complaint must be accepted as true except those relating to the amount of damages. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Accordingly, as the instant proceeding is an inquest on damages, the factual background is drawn primarily from the declaration of each Plaintiff and, where noted, Plaintiffs' proposed findings of fact, which in turn cite to the declarations.

did not provide Plaintiffs with any written information about minimum wage and overtime laws, nor did they post or maintain any notice with such information. Defendants also did not provide Plaintiffs with documentation reflecting the hours they worked, their rate of pay, overtime, or deductions or credits made to their pay. For those Plaintiffs who received tips, Defendants did not notify Plaintiffs that the tips were included in and served as an offset to their wages.[4]   Each Plaintiff asserts that Defendants never granted them a meal break or rest period for all or some of the relevant time period. Each Plaintiff states that they did not receive time-and-a-half overtime pay for hours worked in excess of 40 hours per week. And, each Plaintiff states that their wages "did not vary regardless of how many additional hours [they] worked in a week." (*See, e.g.,* Villanueva Decl. ¶ 20.)

The positions, dates of employment, hours worked, and pay of each Plaintiff follow.[5]   Unless otherwise indicated, the Court found the Plaintiff's declaration generally supported by his hearing testimony.

---

[4] Notwithstanding Plaintiffs' assertions regarding Defendants' practices with respect to tips, Plaintiffs provide no evidence of the amount of any tips withheld, and their damages calculations do not refer to withheld or unpaid tips. (*See* FFCL ¶¶ 206-219.) Accordingly, the Court's damages calculations likewise do not include withheld or unpaid tips. The Court's damages calculations also do not include amounts paid by Plaintiffs for "tools of the trade." Some Plaintiffs had to use their own funds to purchase job-related tools, such as a helmets and lights for making deliveries or knives and aprons for cooking. (*See, e.g.,* FFCL ¶ 17.) Plaintiffs, however, do not provide any evidence of the value of those items and do not include them in their damages calculations. (*See* FFCL ¶¶ 206-219.) Accordingly, the Court also does not include them.

[5] In most instances, Plaintiffs refer to their respective dates of employment and hours worked as "approximate." For simplicity, the Court omits repeated use of that term but deems all such statements of dates and times to be approximate unless otherwise specified by any of the Plaintiffs. Where, as here, the employer has not produced any time records or similar evidence of dates and times worked, a plaintiff can meet his burden of proving damages with their own recollection, even if not recalled with exactitude. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

1.      **Raul Saldana Villanueva** ("Villanueva") was employed at Mumbles from 2007 until January 25, 2016.  (Villanueva Decl. ¶ 7.)  He primarily worked as a delivery person, but spent a "significant" (but unspecified) portion of his workday performing non-tipped duties such as cleaning and stocking.  (*Id.* ¶¶ 8-9.)  Villanueva's sworn statement of the hours he worked is internally inconsistent.  Villanueva first claims that he "regularly worked in excess of 40 hours per week," but in the very next paragraph says that from 2010 to January 25, 2016, he worked only 33 hours per week.[6]  (*Id.* ¶¶ 13-14.)  Villanueva's pay, paid semi-monthly, changed over time:  $4.00 per hour from November 2010 to January 2013; $5.00 per hour from January 2013 to December 2015; and $7.50 per hour from January 1, 2016 to January 25, 2016.  (*Id.* ¶¶ 17-19.)  Defendants required Villanueva to work an additional 30 minutes past his scheduled departure time every day but did not pay him any additional compensation.  (*Id.* ¶ 20.)

2.      **Andres Zamora Ramirez** ("Ramirez") was employed at Mumbles from 2007 until January 25, 2016.  (Zamora Decl. ¶ 7.)  At Mumbles, Ramirez typically worked

---

[6] In his declaration, Villanueva also asserts that "for a period of approximately one year during November 2010 to January 25, 2016, he typically worked not only his regular hours as a delivery person, but also as a porter for a total, including his delivery hours, of 93 hours per week. (Villanueva Decl. ¶ 15.) Villanueva does not, however, identify the actual time period of that approximate one year; nor does he identify what he did as a porter (or even explain why the restaurant employed a porter from 12 midnight to 10 a.m. Thursdays through Tuesdays).  At the hearing, Villanueva gave inconsistent answers in response to the Court's questions about the 93-hour weeks, first saying he thought that was in 2016 and then later indicating it was 2013 (7/23/2020 Tr. at 5:20-6:11, 7:10-23), and at first attributing the 93 hours to working seven days a week rather than six days week and later attributing them to working double shifts (7/23/2020 Tr. 6:8-11, 6:16-7:13).  Accordingly, the Court finds these assertions too vague to include the purported porter hours in determining Villanueva's damages.  *See Daniels v. 1710 Realty LLC*, 497 Fed. App'x 137, 139 (2d Cir. 2012) (affirming district court's finding employee's testimony "too vague to be credible").

62 to 64 hours per week.  (*Id.* ¶ 13.)  From January 2016 to October 16, 2016, Ramirez worked at Benjamin's, typically 68 hours per week, consisting of three days a week from 7:00 a.m. until 5:00 p.m., two days a week from 7:00 a.m. until about 9:00 p.m., and one day a week from 12:00 p.m. until about 10:00 p.m.  (*Id.* ¶ 14.)  Throughout his employment with Defendants, Ramirez prepared food and made deliveries.  (*Id.* ¶ 8.)   At both restaurants, Ramirez was paid $10.00 per hour, on a semi-monthly basis.  (*Id.* ¶ 16.)

3.    **Julio Alvarez Vargas** ("Vargas") was employed as a line cook at Mumbles from approximately May 2001 to January 5, 2016.  (Vargas Decl. ¶¶ 7-8.)   From approximately December 2010 to April 2015, Vargas worked 66 to 72 hours per week consisting of working from 7:00 a.m. until 6:00 or 7:00 p.m. Tuesdays through Sundays.  (*Id.* ¶ 13.)  From April 2015 to January 25, 2016 he worked 71 to 76 hours per week, consisting of 7:00 a.m. to 6:00 or 7:00 p.m. on Tuesday through Sunday, with the exception of Thursday on which he put in longer days, working from 7:00 a.m. until 11:00 p.m.  (*Id.* ¶ 14.)  Vargas's pay, distributed on a semi-monthly basis, varied over time: $11.00 per hour from December 2010 to April 2012; $13.50 per hour from May 2012 to January 2014; $14.00 per hour from February 2014 to March 2015; and $11.00 per hour from April 2015 until January 25, 2016.  (*Id.* ¶¶ 16-19.)  Defendants required Vargas to work one to two hours past his regular schedule on Fridays, Saturdays and Sundays, without paying him "any additional compensation."[7]  (*Id.* ¶ 20.)

---

[7] Vargas's declaration, as well as several of the other Plaintiff declarations, actually reads "Defendants required me to work one or two hours past my scheduled departure time . . . without paying *him* any additional compensation."  (Vargas Decl. ¶ 20.)  The most likely explanation for this is that Plaintiffs' counsel copied and pasted the corresponding word-for-word allegation in the Amended Complaint without converting all appearances of "him" to "me."

6

4.     **Efrain Rosas** ("Rosas") worked as a dishwasher at Benjamin's from 1997 to October 2016.  (Rosas Decl. ¶¶ 7-8.)  From January 2011 until October 2016, Rosas typically worked 8:00 a.m. to 6:30 p.m. six days a week for a total of 63 hours.  (*Id.* ¶ 13.)  Defendants paid Rosas on a semi-monthly basis at the following hourly rates:  $8.50 per hour from January 2011 to June 2013; $9.00 per hour from June 2013 to May 2015; and $10.00 per hour from May 2015 to October 2016.  (*Id.* ¶¶ 15-17.)  Defendants required Rosas to work 30 minutes beyond his scheduled departure time six days a week but did not pay him for the additional time worked.  (*Id.* ¶ 18.)  Whereas some of the other Plaintiffs claim they never received a meal break or rest period for their entire tenures at Defendants' restaurants, Rosas asserts that he never received such a break only prior to June 2013.  (*Id.* ¶ 19.)

5.     **Francisco Rosendo** ("Rosendo") worked as a cook at Benjamin's from June 2004 to October 2016.  (Rosendo Decl. ¶¶ 7-8.)  From January 2011 to October 2016, Rosendo worked from 11:00 a.m. to 9:00 p.m. five days a week, and from 11:00 a.m. until about 10:00 p.m. one day a week, for a typical total of 61 hours per week.  (*Id.* ¶ 13.)  Rosendo received a fixed weekly salary of $712.50 paid on a semi-monthly basis. (*Id.* ¶ 15.)  Defendants required Rosendo to work one hour past his scheduled departure time on Fridays but did not pay him additional compensation for doing so.  (*Id.* ¶ 16.)

6.     **George Sanchez Galindo** ("Galindo") worked at Benjamin's from October 2012 to October 2016.  (Sanchez Decl. ¶ 7.)  He served in several capacities, including as phone operator, food runner, busboy and delivery worker.  (*Id.* ¶ 8.)  Galindo asserts, however, that he also spent a "significant" (but unspecified) portion of his workday performing non-tipped duties such as preparing food and cleaning.  (*Id.* ¶ 9.)  Galindo's

weekly hours varied over time with typical total work weeks of 54 hours from October 2012 to January 2014; 49 hours from January 2014 to August 2015; 39 hours from August 2015 to December 2015; 49 hours for the month of January 2016; 39 hours from February 2016 to May 2016; 49 hours from June 2016 to August 2016; and 39 hours from August 2016 to October 2016.  (*Id.* ¶¶ 13-19.)  For all periods, however, Galindo worked twelve-hour days on Saturdays and Sundays.  (*Id.*)  Defendants paid Galindo on a bi-monthly basis as follows:  $4.00 per hour from October 2012 to January 2014; and from January 2014 until October 2016, he received $9.00 for ten hours of each week (while he operated the restaurant phone) and $7.25 per hour for the rest of the hours worked that week.  (*Id.* ¶¶ 21-22.)  For five days of each week, Defendants required Galindo to work an hour past his scheduled departure time but did not pay him additional compensation.  (*Id.* ¶ 23.)  In addition to not being notified about how Defendants were accounting for his tips, Galindo asserts that Defendants withheld a portion of his tips from large catering orders; Galindo does not, however, indicate the extent to which that happened.  (*Id.* ¶¶ 26-27.)

7.    **Jose Patricio Sanchez Rojas** ("Rojas") worked at Benjamins from 1997 to October 2016.  (Rojas Decl. ¶ 7.)  He was paid twice a month at a rate of $10.00 per hour from January 2011 to October 2013 and $11.50 per hour from October 2013 to October 2016.  (*Id.* ¶ 15-16.)  His declaration, however, is internally inconsistent.  Specifically, Rojas states that he was "employed as a food preparer and cook" – to which he devoted a "significant" amount of his time – but also "ostensibly a delivery worker."  (*Id.* ¶¶ 8-9.)  When setting forth the number of hours he worked, however, Rojas avers that he worked as a delivery worker the entire time.  (*Id.* ¶ 13.)

8

His hearing testimony did not resolve the inconsistency and revealed additional credibility concerns. Rojas's declaration says he worked from 7:00 a.m. to 11:00 p.m. five days a week and from 7:00 a.m. to 5:00 p.m. two days a week, for a typical weekly total of 100 hours. (*Id.*) His declaration also states that Defendants required him to work an hour each day past his scheduled departure without paying him additional compensation and that Defendants withheld a portion of tips from large catering delivery orders that were his. (*Id.* ¶ 17, 21.) But at the hearing, Rojas claimed to have worked from 6:00 a.m. to midnight, seven days a week (which amounts to 126 hours per week). (Transcript of Damages Inquest Held on July 21, 2020 ("7/21/2020 Tr.") at 14:5-10.) Considering the irreconcilable inconsistency regarding Rojas's work at the restaurant, together with his inconsistent hearing testimony, the Court finds his assertions not to be credible and is left with no credible basis on which to award him damages.

8.    **Miguel Cuautle Ocelotl** ("Ocelotl"), according to his declaration, worked at Benjamin's from October 15, 2003 to October 14, 2016. (Ocelotl Decl. ¶ 7.) He was employed as a food runner, busboy and delivery worker but also spent a "significant" (but unspecified) amount of his time performing non-tipped duties such as cleaning, preparing food and stocking. (*Id.* ¶ 9.) From January 2011 until September 2013, Ocelotl worked as a delivery person from 5:00 a.m. until 3:00 p.m. Mondays to Fridays and as a busboy from 4:00 p.m. to 11:00 p.m. Mondays, Tuesdays, Thursdays, Fridays and Saturdays, resulting in a typical total of 85 hours per week. (*Id.* ¶ 13.) From September 2013 to October 2016, Ocelotl worked as delivery person from 9:00 a.m. to 11:00 p.m. Mondays, Tuesdays, Thursdays and Fridays, from 9:00 a.m. to 5:00 p.m. on Wednesdays, and from 11:00 a.m. to 11:00 p.m. on Saturdays, resulting in a typical total of 76 hours per week.

(*Id.* ¶ 14.)  From January 2011 to September 2013, Defendants paid Ocelotl $9.00 per hour as a delivery worker and $4.50 per hour as a busboy.  (*Id.* ¶ 16.)  From September 2013 to October 2016, Defendants paid Ocelotl $9.00 as a delivery worker and $6.00 per hour as a food runner.  (*Id.* ¶ 17.)  Ocelotl's declaration asserts that Defendants required him to work four hours prior to his schedule start time five days a week without paying him additional compensation.  (*Id.* ¶ 18.)  At the hearing, however, Ocelotl testified that he worked these extra early morning hours only about two times a month.  (7/21/2020 Tr. at 19:18-23.)[8]  The Court finds him to be largely credible, however, and credits his testimony except for the portions regarding unpaid hours outside of his regular schedule.

9.     **Zeferino Baltazar** ("Baltazar"), according to his declaration, was employed by Benjamin's from June 2004 to October 2016.  (Baltazar Decl. ¶ 7-8.)  From January 2011 to January 2015, Baltazar worked as a salad preparer from 7:00 a.m. to 5:00 or 5:30 p.m. six or seven days a week, resulting in a typical total of 60 to 73.5 hours per week.  (*Id.* ¶ 12.)  From January 2015 until October 2016 he worked as a grill man or cook from 3:00 p.m. to 11:30 p.m. on Mondays, Tuesdays and Wednesdays, and from 3:00 p.m. to 12:30 a.m. Thursdays, Fridays, and Saturdays, resulting in a typical total of 54 hours per week.  (*Id.* ¶ 13.)  Baltazar was paid semi-monthly at the rate of $7.50 per hour from January 2011 to January 2015; $11.00 per hour from January 2015 to February 2016; and $12.00 per hour from February 2016 to October 2016.

At the hearing, however, Baltazar's testimony was materially inconsistent with the information in his declaration.  For instance, although his declaration mentions only

---

[8] The 7/21/2020 Transcript refers to Ocelot as "Plaintiff Cuautle," though he identified himself as "Miguel."  (*See* 7/21/2020 Tr. at 18:20:24.)  As indicated above, Ocelotl's full name is Miguel Cuautle Ocelotl.

having worked for Benjamin's, during the hearing he said he worked almost entirely at Mumbles.  (Transcript of Damages Inquest Held on July 23, 2020 ("7/23/2020 Tr.") at 8:20-9:5.)  As another example, when asked the hours he worked at Mu2mbles, he responded with 10:00 a.m. to 4:00 p.m. – nowhere close to any of the time frames he claims to have worked in his declaration.  (7/23/2020 Tr. at 9:20-25.)  And when asked what work he performed at Mumbles, Baltazar said he was a delivery boy and, only upon further questioning, mentioned putting together pizza boxes and cleanup.  (7/23/2020 Tr. at 9:6-14.)  These answers cannot be squared with the representations in his declaration that he worked as a salad preparer and then a grill man or cook.  While he later mentioned during the hearing that he also worked as a salad preparer (7/23/2020 Tr. at 9:15-19), he never suggested that was his primary function as compared to being a delivery boy as he first testified and which he nowhere mentions in his declaration.  Accordingly, the Court finds Baltazar not credible and is left with no basis to award him damages.

10.   **Esteban Herrera** ("Esteban Herrera") worked as a porter at Benjamin's from 1991 to October 2016, and at Mumbles for one month in 2014.  (Esteban Herrera Decl. ¶¶ 7-8.)  From November 2010 to October 2016, he worked from 12:00 a.m. to 10:00 a.m. Mondays to Saturdays, resulting in a typical total of 60 hours per week.  (*Id.* ¶ 13.)  For that same time period, Esteban Herrera was paid $10.00 per hour on a semi-monthly basis.  (*Id.* ¶ 15.)  Two or three times a month, Defendants required Esteban Herrera to work two hours past his scheduled departure time without paying him additional compensation.  (*Id.* ¶¶ 16-17.)

11.   **Jesus Herrera** ("Jesus Herrera") worked as a cook at Benjamin's from November 2010 to October 20, 2016.  (Jesus Herrera Decl. ¶¶ 7-8.)  From January 2011

to October 2016, he worked from 7:00 a.m. until 7:00 p.m. six days a week, resulting in a typical workweek of 72 hours.  (*Id.* ¶ 13.)  For that same time period, Jesus Herrera was paid a fixed salary of $1,400 on a semi-monthly basis.  (*Id.* ¶ 15.)

12.    **Bladimir Vazquez Solis** ("Solis") was employed by Benjamin's as a busboy and food runner from June 2015 until August 2016, although during that time a "significant" (but unspecified) of his work entailed non-tipped duties such as cleaning and stocking.  (Vasquez Decl. ¶¶ 7-9.)  For all of his employment during that time, Solis worked as busboy from 4:00 p.m. to 11:15 p.m. Thursdays, Fridays, and Saturdays, and as a food runner from 5:00 p.m. to 10:00 p.m. on Wednesdays, resulting in a total work typical work week of 26.75 hours.  (*Id.* ¶ 13.)  On at least ten occasions, Solis worked an additional seven hours to cover for a missing co-worker, resulting in a typical work week of up to 33.75 hours.  (*Id.*)  Defendants paid Solis $6.00 per hour on a semi-monthly basis from June 2015 to December 2015, and $7.50 per hour on a semi-monthly basis from January 2016 to August 2016.  (*Id.* ¶¶ 15-16.)  Defendants required Solis to work 15 minutes past his scheduled departure time every day without paying him additional compensation.  (*Id.* ¶ 17.)

13.    **Dionisio Florencio Perez Marana** ("Marana") worked at Benjamin's from 1998 to October 2013 as either a dispatcher or food runner.  (Marana Decl. ¶¶ 7-8.)  He also spent a "significant" (but unspecified) portion of his day performing non-tipped duties, such as painting, shoveling, and cleaning.  (*Id.* ¶ 9.)  From January 2011 to July 2011, Marana worked as a dispatcher from 11:00 a.m. to 5:00 p.m. and as a food runner from 5:00 p.m. to 10:00 p.m. Tuesdays and Thursdays, resulting in a typical workweek of 66

hours.[9]  (*Id.* ¶ 13.)  From July 2011 to September 2011, he worked as a dispatcher from 11:00 a.m. to 5:00 p.m. and as a food runner from 5:00 p.m. to 10:30 p.m. Thursdays through Mondays, resulting in a typical workweek of 55 hours.  (*Id.* ¶ 14.)  From September 2011 to October 2013, Marana worked as a dispatcher from 11:00 a.m. to 5:00 p.m. and as a food runner from 5:00 p.m. to 10:00 p.m. Thursdays through Tuesdays, resulting in a typical workweek of 66 hours. (*Id.* ¶ 15.)  Defendants paid Marana semi-monthly at the rate of $8.00 per hour from January 2011 to September 2011, and $7.50 per hour from September 2011 to October 2013.  (*Id.* ¶ 2-3[10].)

14.  **Luis Fernando Tlaltepec-Perez** ("Tlaltepec-Perez") worked at Benjamin's from May 2007 to October 2016 as a busboy, food runner and delivery worker, although he also spent a "significant" (but unspecified) portion of his time performing non-tipped duties such as preparing food and refilling containers.  (Tlaltepec-Perez Decl. ¶¶ 7-9.) For the entirety of his tenure at Benjamin's, Tlatlepec-Perez worked as a delivery work from 5:00 p.m. to 11:00 p.m. Wednesdays, Thursdays, and Fridays, and as a busboy and food runner from 5:00 p.m. to 11:00 p.m. Saturdays, and as a food runner from 10:00 a.m. to 12:00 a.m. Sundays, resulting in a typical workweek of 40 hours.  (*Id.* ¶ 13.)

---

[9] Marana's declaration actually says that he worked as a dispatcher during both segments of time.  Given that the two segments are separate, however, and given the ensuing paragraphs covering different time periods state that Marana served as a dispatcher during the first time period and as a food runner during the second period, it is evident that the declaration omitted saying that Manana worked as food runner for the 5:00 p.m. to 10:00 p.m. period. (*Compare* Manana Decl. ¶ 13 with *id.* ¶¶ 14-15.)  Marana's hearing testimony, however, did not clarify the issue as he did not ascribe his varied roles to any particular time periods.  (*See* 7/21/2020 Tr. at 12:2-25.)  Notwithstanding that discrepancy, the Court finds him to be largely credible.

[10] The Court notes that Marana's declaration inexplicably jumps from paragraph 15 to paragraph 1, providing further evidence of counsel's ill-executed efforts to copy and paste materials from one document to another.

Defendants paid Tlaltepec-Perez $4.00 per hour on a semi-monthly basis.  (*Id.* ¶ 14.)  He was required to work one hour past his scheduled departure time on Sundays, without additional compensation.  (*Id.* ¶ 16.)

In sum, Plaintiffs maintain that, as demonstrated by the foregoing, Defendants willfully did not pay Plaintiffs their legally required wages and failed to provide Plaintiffs with written notices and written statements containing their rate of pay and other required disclosures.  While all Plaintiffs claim that they did not receive overtime pay, only half of them claim that they did not receive minimum wage; specifically, Villanueva, Solis, Galindo, Rojas, Tlaltapec-Perez, Ocelotl, and Baltazar.[11]

## Analysis

In the following sections, the Court discusses the relevant legal principles and damages elements.  In the last section, the Court tabulates the damages owed to each of the Plaintiffs.[12]

### A.        Default Judgment

When a defendant defaults, all the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  *Finkel*, 577 F.3d at 84 (trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all

---

[11] *Compare* Villanueva Decl. ¶¶ 28-29 (claiming unpaid minimum wages), Solis Decl. ¶¶ 26-27 (same), Galindo Decl. ¶¶ 32-33 (same), Rojas Decl. ¶¶ 25-26 (same), Tlaltapec-Perez Decl. ¶¶ 23-24 (same), Ocelotl Decl. ¶¶ 27-28 (same), Baltazar Decl. ¶¶ 23-24 (same) *with* Ramirez Decl. ¶¶ 21-22 (no mention of unpaid minimum wages), Vargas Decl. ¶¶ 29-30 (same), Rosas Decl. ¶¶ 23-24 (same), Rosendo Decl. ¶¶ 21-22 (same), Esteban Herrera Decl. ¶¶ 23-24 (same), Jesus Herrera Decl. ¶¶ 21-22 (same), Marana Decl. ¶¶ 12-13 at 4 (same).

[12] The damages analysis does not include Rojas and Baltazar for the reasons explained earlier.  Any further reference to "Plaintiffs" collectively refers to all Plaintiffs except for Rojas and Baltazar unless noted otherwise.

reasonable inferences in its favor"); *Keystone Global LLC v. Auto Essentials, Inc.*, No. 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015) (same).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiffs. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."  *Shld, LLC v. Hall*, No. 15 Civ. 6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017); *Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide evidence establishing the amount of damages with reasonable certainty.  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "a plaintiff must . . . substantiate a claim with evidence to prove the extent of damages").  Where, as here, the employer has defaulted, a court may presume the employee's recollection of hours to be correct.  *See, e.g.*, *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002) (The "employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1940)), overruled on other grounds by *Slayton v. American Express Co.*, 460 F.3d 215, 226 (2d Cir. 2006); *Cao v. Chandara Corp.*, No. 00 Civ. 8057, 2001 WL 34366628, at *5 (S.D.N.Y. July 25, 2001) (plaintiff's recollection and estimate of hours worked were presumed to be correct where defendant employer defaulted).

**B.     Prerequisites Under FLSA and NYLL**

The FLSA and NYLL generally require employers to pay certain minimum wages as well as a premium overtime rate to employees who work more than 40 hours in a workweek.[13]  29 U.S.C. § 207(a)(1); NYLL § 160; 12 N.Y.C.R.R. § 142-2.2.  An employer who fails to pay in accordance with the FLSA is "liable to the employee" for unpaid minimum wages, unpaid overtime compensation and other damages.  29 U.S.C. § 216(b); *see also Jacobs v. New York Foundling Hospital,* 577 F.3d 93, 96 (2d Cir.2009) (per curiam).

"Whether an individual qualifies as an employer is substantially similar under the FLSA and NYLL, and courts commonly apply FLSA case law in deciding cases under both statutes."  *Yu Ling Shen v. Xue Mei Chen*, No. 17 Civ. 1556, 2018 WL 2122819, at *3 (S.D.N.Y. May 8, 2018); *see also Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).

That said, the FLSA has the additional requirement of interstate commerce.  The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  An enterprise is "engaged in commerce or in the production of goods for commerce" if, 1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on

---

[13] The FLSA enumerates certain categories of employees who are "exempt" from the overtime and minimum wage requirements.  29 U.S.C. § 213.  Because none of those exemptions apply here, the Court will not discuss them.

goods or materials that have been moved in or produced for commerce by any person;" *and* (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C. § 203(s)(l)(A)(i)-(ii).

Each of the Plaintiffs attest to facts confirming that the Defendants meet the definition of employers under the FLSA, including with respect to the volume of business conducted by the restaurants, their use of goods and materials in interstate commerce, and the Defendants' control over Plaintiffs' pay, hours, and the like.  Being Plaintiffs' employers under the FLSA, Defendants also are Plaintiffs' employers under the NYLL.

## C.      The Applicable Damages Period

The statute of limitations is six years for claims under the NYLL, and three years for claims under the FLSA if a defendant's acts are willful (and two years if they are not). 29 U.S.C. § 255(a); NYLL § 663(3); *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012).  Accordingly, Plaintiffs may at most recover damages six years prior to filing of this action, which is November 14, 2010.

## D.      Burdens

Under the FLSA, an employee bears the burden of proving that he was not properly compensated for his work.  *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012).  "Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered."  *Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287, 2018 WL 1517205, at *15 (S.D.N.Y. March 27, 2018).  In such instances, "an employee has carried out his burden if he proves that he has in fact performed work for

which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). The Second Circuit has noted that this burden "is not high" and may be satisfied through an employee's "estimates based on his own recollection." *Id.* at 362.

If an employee satisfies this initial showing, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, 136 S.Ct. 1036, 1047 (2016). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate." *Gonzalez v. Masters Health Food Service Inc.*, No. 14 Civ. 7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Kuebel*, 643 F.3d at 362) (internal quotations omitted); *see also Hosking v. New World Mortgage, Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (noting "that the employee's burden of proving damages under the FLSA is minimal, particularly when the employer does not keep records").

The NYLL applies a similar framework to unpaid compensation claims, except that Section 196-a provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y.

2017) (quoting *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) and NYLL § 196-a(a)).

Here, the Court does not have any payroll records before it to evaluate Plaintiffs' claims.  Accordingly, Plaintiffs may establish that they were underpaid through their own recollection of their estimated hours, wages, and the like.

## E.      Unpaid Minimum Wages

The FLSA and the NYLL each require an employer to pay not less than a statutorily-set minimum wage for each hour of work.  *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2(a)(1)(i).   Plaintiffs are only entitled to damages under one statute.  *Gamero*, 272 F. Supp. 3d at 498 ("[A]n employee may not receive a double recovery of back wages under both the FLSA and they NYLL.") (quoting *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (internal quotations omitted)).   "The federal minimum wage," however, "does not preempt the state minimum wage, . . . and a plaintiff may recover under whatever statute provides the highest measure of damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973, at *1 (S.D.N.Y. May 24, 2011); *see also Gamero*, 272 F. Supp. 3d at 498 (the Court has discretion to award Plaintiffs damages under "the statute providing the greatest amount of relief").

To determine the extent of Plaintiffs' damages under FLSA's or the NYLL's minimum wage provisions, the Court must first address three items: (i) whether, for tipped-employees, Defendants are entitled to take a tip credit against their minimum wage

and overtime obligations for tips received; (ii) whether Plaintiffs took breaks that reduce their hours, and (iii) the Plaintiffs' "regular rate" of pay.

### 1. Tip Credit

Under "[b]oth the FLSA and the NYLL," an employer may "pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage[,]" and "[t]his allowance against the minimum cash wage is known as a 'tip credit.'" *Gamero*, 272 F. Supp. 3d at 500 (quoting *Inclan v. New York Hospital Group, Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (internal quotations omitted)). An employer may not take a tip credit unless (1) "such employee has been informed by the employer of the [tip credit] provision[ ]"; and (2) "all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m)(2)(A)(ii). This provision is "strictly construed." *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016). Under both the FLSA and the NYLL, the burden is on the employer to show that they have complied with the tip credit requirements. *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 673 (S.D.N.Y. 2017).

Under the NYLL, notice of the tip credit must be in writing. 12 N.Y.C.R.R. § 146-2.2(a); *accord Inclan*, 95 F. Supp. 3d at 498. Moreover, once an employer has provided written notice of this tip credit, the employer must obtain "acknowledgement of receipt signed by the employee," and that signed acknowledgement must "be kept on file for six years." 12 N.Y.C.R.R. § 146-2.2(c). "Courts in and outside of this District 'have interpreted the notice provision to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage

20

obligations.'" *Hernandez*, 2016 WL 3248493 at *23 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 287 (S.D.N.Y. 2011)).

Here, no tip credit may be applied in favor of Defendants.  Each Plaintiff receiving tips has averred that Defendants did not provide the requisite notice that tips would be counted against their minimum wage.  Plaintiffs also have asserted that they did not receive all tips due to them.  Accordingly, the Court will not apply a tip credit in determining the minimum wages due each Plaintiff.

### 2. Meal Breaks

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." *Hart v. Rick's Cabaret International Inc.*, 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005)); *see Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (interpreting 29 C.F.R. § 785.19)).  For a break to so qualify, the employee "must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19.  "Ordinarily 30 minutes or more is long enough for a bona fide meal period," *id.*, but "[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . are customarily paid for as working time [and] must be counted as hours worked." 29 C.F.R. § 785.18.  Each Plaintiff asserts that he did not receive any meal or rest breaks.  Accordingly, the Court finds that all of Plaintiffs' time worked was compensable.[14]

---

[14] The exception is Rosas, who asserts that he did not receive any break only prior to June 2013.  (Rosas Decl. ¶ 19.)  It seems odd that Defendants would have afforded breaks to only one employee but not any of the others.  The record contains no evidence, however, to contradict the other Plaintiffs' assertions that they did not receive any meal or rest breaks.

### 3. Regular Rate of Pay vs. Minimum Wage

The remaining question then is whether Plaintiffs' "regular rate" of pay was less than the applicable minimum wage. Under the FLSA, the "regular rate" of pay is determined by "dividing an employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked." *Romero v. Anjdev Enterprises.*, Inc., No. 14 Civ. 457, 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017) (alteration omitted) (citing 29 C.F.R. § 778.109 (2016)). By contrast, under the NYLL, the regular rate of pay of an employee in the hospitality industry (which includes restaurants) is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b). "Under both the FLSA and NYLL, once the Court determines the 'actual number of hours worked' per week and calculates the 'regular rate' based on those hours, the 'regular rate' is then compared to the statutorily-imposed minimum wage to determine whether the employee has been underpaid." *Java v. Aguila Bar Restaurant Corp.*, No. 16 CV 6691, 2018 WL 1953186, at *10 (S.D.N.Y. April 25, 2018).

During the relevant time period, state and federal minimum hourly wage rates were as follows:

|       | NYLL  | FLSA  |
|-------|-------|-------|
| 2010  | $7.25 | $7.25 |
| 2011  | $7.25 | $7.25 |
| 2012  | $7.25 | $7.25 |
| 2013  | $7.25 | $7.25 |

| 2014 | $8.00 | $7.25 |
| 2015 | $8.75 | $7.25 |
| 2016 | $9.00 | $7.25 |

29 U.S.C. § 206(a)(1); NYLL § 652(1)[15].  As can be seen, under either regime, the minimum wage rate was $7.25 from 2010 to the end of 2013.  For 2014-2016, however, the NYLL minimum hourly wage exceeded that of the FLSA.  The Court will therefore apply $7.25 as the minimum wage for 2010 through 2013 and the applicable NYLL rates for 2014-2016.

Determining the regular rate of pay is not uniform for all Plaintiffs.  Two Plaintiffs attest to having been paid a salary.  Specifically, Plaintiff Jesus Herrera received $1,400 bi-monthly, which equates to roughly $700 per week.  He worked 72 hours per week.  Dividing $700 by 40, as the lesser number of weekly hours, results in a "regular rate" of pay of $17.50 per hour.  Jesus Herrera's regular rate of pay was thus well in excess of the minimum wage every year.[16]  The other Plaintiff who received a salary is Rosendo, who worked 61 hours per week and received a fixed weekly salary of $712.50 paid bi-monthly.  Dividing $712.50 by 40, again the lower number of hours, results in a regular

---

[15] New York's statutory minimum wage was $7.15 from 2010-2013.  *See* NYLL § 652(1). That same statute provides, however, that where the federal minimum wage is higher than the state's, the federal minimum wage will control.  *Id.*  Accordingly, the effective New York minimum wage from 2010 through 2013 was $7.25.

[16] Were one to divide $700 by 72 – the total number of hours Jesus Herrera claims to have worked each week – the regular rate of pay would be $9.72, still in excess of the statutory minimum wage for every year at issue.  As explained above, however, the New York regulations require dividing his weekly salary by 40.

rate of pay of $17.81 per hour.  As with Jesus Herrera, Rosendo received a regular rate of pay well in excess of minimum wage.[17]

In contrast to Jesus Herrera and Rosendo, the other Plaintiffs attest to being paid an hourly rate.  The following employees received an hourly rate in excess of the minimum wage and thus are due no minimum wage damages:  Ramirez ($10.00); Vargas ($11.00 to $14.00); Rosas ($8.50 from 2011-June 2013, $9.00 from June 2013 to May 2015, $10.00 from May 2015 to October 2016); Esteban Herrera ($10.00); Marana ($7.50 from September 2011 to October 2013).

The following employees did not receive minimum wage for some but not all hours: Galindo ($4.00 from October 2012 to January 2014, and $7.25 for all but 10 hours during January 2014 to October 2016); Ocelotl (as busboy from 2011 to September 2013 – $4.50 per hour for 35, of 85 total, hours per week, and as food runner from September 2013 to October 2016 – $6.00 per hour for 40,[18] of 76 total, hours per week).

The following employees did not receive minimum wage for any hours:  Villanueva ($4.00 from November 2010 to January 2013, $5.00 from January 2013 to December

---

[17] Were one to divide $712.50 by 61 – the total number of hours Rosendo claims to have worked each week – the regular rate of pay would be $11.68, still in excess of the statutory minimum wage for every year.  As explained above, however, the New York regulations require dividing his weekly salary by 40.

[18] For the September 2013 to October 2016 period, Ocelotl specified the hours he worked as a food runner (12 hours) as distinct from a delivery worker (0 hours) on Saturdays, but did not do the same for the four other days of the week he worked.  (Ocelotl Decl. ¶ 14.) Those other four days, he worked 14 hours per day as both a delivery worker and food runner.  As a reasonable approximation of hours devoted to each of those two tasks during those four days, the Court will split the time, which results in 7 hours during each of those four days per week that Ocelotl was not paid minimum wage.  Adding the 12 hours on Saturdays when Ocelotl worked as a food runner brings the total hours per week that he did not receive minimum wage to 40 hours.

2015, and $7.50 from January 1 to 25, 2016); Solis ($6.00 from June to December 2015, and $7.50 from January to August 2016); Tlaltepec-Perez ($4.00 from January 2011 through October 2016).

Plaintiffs are entitled to an award of unpaid minimum wages, or regular rate of pay if in excess of minimum wage, in accordance with the individual damage calculations set forth in the Revised Damages Schedule.[19]

## F.    Overtime Pay

Plaintiffs allege violations of the FLSA's overtime provision, which states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  *See Lahcen v. Kiran Park Newsstand Inc.*, No. 11 Civ. 5998, 2014 WL 3887222, at *4 (S.D.N.Y. Aug. 7, 2014) (noting requirement to pay "time-and-a-half" for "hours worked in excess of 40 hours in a workweek"); *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195, 2012 WL 1669341, at *6 (S.D.N.Y. May 14, 2012) ("If an employee demonstrates that he has worked more than 40 hours per week, he is entitled to recover the overtime rate for any hours in excess of 40.").   The same

---

[19] The Revised Damages Schedule contains an error in the regular rate of pay and overtime rate of pay for Plaintiff Galindo.  More specifically, from 2014 forward Galindo received a $9.00 rate of pay for ten hours of each week and $7.25 rate of pay for all other hours.  His hours per week varied each year at 39 or 49 hours per week.  His regular rate of pay is thus calculated as follows:  for a 39-hour week, ((10hrs x $9) + (29 hrs. x $7.25)) / 39 hrs = $7.70/hr.; for a 49-hour week, ((10hrs x $9) + (39 hrs. x $7.25)) / 49 hrs. = $7.61/hr.  In the Revised Damages Schedule, Plaintiffs calculated Galindo's regular rate of pay as if he received a flat weekly amount rather than an hourly rate.  Because Plaintiffs have repeatedly failed to provide a 100% accurate damages schedule, the Court will not ask for another revision, but will instead make the correct calculation in the damages section below.

standard applies under the NYLL. *Nakahata v. N.Y.-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 200 (2d Cir.2013) (citing 12 N.Y.C.R.R. § 142–2.2); *see also* 12 N.Y.C.R.R § 146-1.4 (hospitality industry overtime pay requirement:  "An employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek.").

With two exceptions, each Plaintiff attests to having worked more than 40 hours a week for all or some part of their employment with Defendants.  The exceptions are Solis, who worked 26.5 hours per week, and Villanueva who, despite saying that he was not paid for overtime, avows that he worked only 33 hours per week.  (Villanueva Decl. ¶¶ 14, 29; Solis Decl. ¶¶ 13; 26-27.)  Accordingly, other than Solis and Villanueva, each Plaintiff is entitled to be paid at one-and-a-half times their regular rate of pay for the number of hours they worked in excess of 40 hours.

The overtime hours for Plaintiffs who testified to receiving an hourly rate of pay (everyone except Rosendo and Jesus Herrera) fall into two categories: those for which Plaintiffs received their regular hourly rate, and those for which Plaintiffs received no pay at all.  The latter category includes the time that Plaintiffs indicated they were required to put in before or after their regularly scheduled hours.  Plaintiffs received no pay for that time, and as a result, Plaintiffs are due one-and-a-half times their regular rate of pay for those periods.  In contrast, for all hours falling within their regular schedules, Plaintiffs are due only half of their regular rate of pay because they already have received their regular rate of pay for those hours.[20]

---

[20] That Plaintiffs received their hourly pay for hours within there regular schedules that exceeded forty hours per week is the only reasonable inference from Plaintiffs' making a point of specifying time before and after their regular schedules that they were required

**G.      Spread of Hours**

Plaintiff are also entitled to the "spread-of-hours" premium under applicable New York regulations.   Those regulations require an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee works in excess of ten hours.[21]   12 N.Y.C.R.R § 142-2.4.   "The spread of hours is the length of the interval between the beginning and end of an employee's workday."   12 N.Y.C.R.R. § 146-1.6. "[A]ll employees in restaurants, regardless of a given employee's regular rate of pay," are covered by the spread-of-hours requirements.  12 NYCRR § 146-1.6(d).   In other words, employers must "pay [restaurant workers] an extra hour's pay at the regular minimum wage for each day they work more than ten hours." *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 241 (2d Cir. 2011) (citing previous version of the regulations).

Based on the recollection of the hours they worked, the following Plaintiffs are entitled to an extra hour of minimum wage pay for working more than ten hours each day for some or all of the relevant time period:  Ramirez, Vargas, Rosendo, Galindo, Rosas, Ocelotl, Jesus, and Marana.[22]   The number of days per week for which each Plaintiff is due spread-of-hours pay is set forth in the Revised Damages Schedule.  In each instance,

---

to put in "without paying . . . any additional compensation."   (*E.g.,* Vargas Decl. ¶ 20; Rosendo Decl. ¶ 16; Galindo Decl. ¶ 23; Esteban Herrera Decl. ¶¶ 16-17; Solis Decl. ¶ 17; Tlaltepec-Perez Decl. ¶ 16.)  It also is consistent with Plaintffs' calculation of damages in the Revised Damages Schedule.

[21] Before January 1, 2011, Section 142-2.4(a) only required spread-of-hours wages for employees who were paid at the minimum wage.   *See Espinosa v. Delgado Travel Agency, Inc.*, No. 05 Civ. 6917, 2007 WL 656271, at *2 (S.D.N.Y. March 2, 2007).

[22] Plaintiffs' Revised Damages Schedule includes no spread of hours for Esteban Herrera, Solis, Tlaltepec-Perez, or Villanueva.

the rate of pay for spread-of-hours pay will be the statutory minimum wage during the applicable time frame.

## H.    Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages. Beginning with the FLSA, any employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back pay, for 100% of the unpaid wages as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."). Liquidated damages are mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary. 29 U.S.C. § 260. The NYLL rules are similar. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid.").

Plaintiffs may recover liquidated damages for unpaid wages under either the FLSA or NYLL, whichever provides for a greater recovery. *Morales v. Mw Bronx, Inc.*, No. 15 Civ. 6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). However, they are not entitled to a double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Here, all Plaintiffs seek liquidated damages.  There is no proof before the Court that Defendants acted in good faith.  To the contrary, the facts are indicative of willfulness, particularly given Defendants' failure to maintain records, the multitude of violations established by default, and Defendants' failure to participate in this case.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness.").  Accordingly, Plaintiffs are entitled to recover liquidated damages.  The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours.[23]

## I.    Wage Notices and Wage Statements

The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay.  Under the law made effective as of April 9, 2011, an employee who was not provided a wage notice within ten business days of his or her first day of employment can recover a penalty of $50 for each week that a violation occurs or continues to occur, not to exceed $2,500.[24]  NYLL § 198(1-b) (McKinney 2011).

In addition to the wage notice requirement, the NYLL also requires employers to provide employees with a wage statement with each payment of wages.  NYLL § 195(3).

---

[23] Prior to April 9, 2011, liquidated damages under the NYLL were set at twenty-five percent of unpaid wages.  *Gold v. New York Life Insurance Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (citing S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010)).  To the extent that Plaintiffs are due liquidated damages for any unpaid wages prior to April 9, 2011, the 25% NYLL liquidated damages rate applies, not the 100% rate under the FLSA.  That is because Plaintiffs may reach back to that time period only by virtue of the six-year statute of limitations afforded by the NYLL as compared to the three years afforded by the FLSA.

[24] As of February 27, 2015, those amounts increased to $50 per day, not to exceed $5,000.  NYLL § 198(1-b) (2016).

Each wage statement must list, *inter alia*, the dates of work covered by that payment of wages; the employee's name; the employer's name, address, and phone number; the applicable rate or rates of pay; applicable deductions; and any allowances claimed as part of the minimum wage. *Id*. Under the law effective as of April 9, 2011, an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $2,500.[25]   NYLL § 198(1-d) (McKinney 2011).   Here, Plaintiffs establish that Defendants failed to provide them with both wage notices and wage statements.   Plaintiffs seek penalties at the statutory rate.   Accordingly, each Plaintiff is entitled to $5,000 in statutory penalties.

Although the wage notice and statement penalty each increased to a maximum of $5,000 in February 2015, most of the Plaintiffs seek recovery under only the earlier limits applicable to most or all of their employment tenure with Defendants – i.e., $2,500 maximum.  (FFCL ¶¶ 200, 206-219.)  The earlier maximum penalty with respect to wage notices applies because those amounts start to accrue ten days after initial employment, and most all Plaintiffs were hired by Defendants well before February 2015.   The exception is Solis, who was employed by Defendants from June 2015 to August 2016 and therefore is entitled to $10,000 for Defendants failure to provide the requisite notice and statements.

### J.    Attorneys' Fees

The FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one.   29 U.S.C. § 216(b);

---

[25] As of February 27, 2015, those amounts increased to $250 per day, not to exceed $5,000.  NYLL § 198(1-d) (2016).

NYLL § 198(1-a); *Callari v. Blackman Plumbing Supply, Inc.*, No. CV 11-3655, 2020 WL 2771008 (2d Cir. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions.").  "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014).  An award of attorneys' fees should be based on the court's determination of a "presumptively reasonable fee." *Sandoval v. Materia Bros. Inc.*, No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 189-90 (2d Cir. 2008)).  This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case." *Id.*

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005).  The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see also Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (same).

Here, the Southern District of New York is the relevant community.  The range of fees for wage and hour cases of this type typically run between $250 and $450, with different courts endorsing slightly different ranges.  *See, e.g.*, *Shanfa Li v. Chinatown Take-Out Inc.,* No. 16 Civ. 7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York."); *Bisono v. TDL Restoration, Inc.*, No. 17 Civ. 9431, 2019 WL 4733599, at *2 (S.D.N.Y. Sept. 27, 2019) (same); *Villar v. Prana Hospitality, Inc.*, No. 14 Civ. 8211, 2019 WL 1387412, at *10-11 (S.D.N.Y. Feb. 4, 2019), report and recommendation adopted, No. 14 Civ. 8211, 2019 WL 1382803 (S.D.N.Y. March 27, 2019) (approving hourly fees of $350/hour and $450/hour for two attorneys on FLSA matter based on their "experience and backgrounds" and the "rates paid for similar work" in the Southern District of New York).

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.").

Lead counsel for Plaintiffs, Michael Faillace, attests to the attorneys' fees expended on behalf of Plaintiffs and provides a record of fees. (Dkt. 135, 135-28.) Faillace is the Managing Member of his firm Michael Faillace & Associates, P.C., and has been in practice since 1983. (*Id.* ¶ 38.) From 1983-2000, Faillace served as in-house Employment Counsel with International Business Machines Corporation. (*Id.*) Faillace has at times taught employment discrimination law, and is the author of various employment law publications. (*Id.*) He charges $450 per hour. (*Id.*)

Faillace was assisted by two other attorneys, Colin Mullholland and Daniel Tannenbaum. Mulholland has been practicing since February 2013, handling civil litigation and serving as a trial lawyer for Faillace. (*Id.* at ¶ 40.) Mulholland's billing rate is $350 per hour. (*Id.*) Tannenbaum, an associate at Faillace's firm, graduated law school in 2008 and since then has practiced labor and employment law and commercial litigation. The Faillace Declaration does not state the rate charged for Tannenbaum, but the rate can be determined from the billing records to be $350 per hour. (*Id.* ¶ 39.) Faillace's firm charges $100 per hour for paralegal work. (*Id.* ¶ 41.) In total, the billing records indicate that Faillace's firm incurred a total of $19,745.00 to prosecute this action. (*Id.* ¶ 42.)

The Court has examined the time entries submitted in connection with the work performed on this matter. The rates charged are at the high end of the range of fees awarded for cases of this type. And although Faillace is a long-time practitioner in the area of wage-and-hour litigation, various courts in this District, including the District Judge in this case, have found the rates charged by Mr. Faillace and his colleagues to be excessive and therefore reduced their hourly rates, generally reducing Faillace's from $450 to $400 per hour. *E.g., Gervacio v. ARJ Laundry Services. Inc.*, No. 17 Civ. 09632

(AJN), 2019 WL 330631, at *2 (S.D.N.Y. Jan. 25, 2019) ("The Court ... reduces the hourly rate for Mr. Faillace to $400 and the hourly rate for Ms. Amant to $175."); *Sanchez Gallego v. Adyar Ananda Bhavean Corp.*, 16 Civ. 04631 (AJN), 2019 WL 131957, at *5 (S.D.N.Y. Jan. 8, 2019) ("In accordance with the rates generally approved of by other district courts in this Circuit, the Court reduces Mr. Faillace's rate to $400 per hour and Mr. Androphy's rate to $350 per hour.")   In accordance with those prior determinations, the Court concludes that Faillace's rate should be reduced to $400 per hour.   The Court finds the rates of Mullholland and Tannenbaum to be reasonable.

As for the work performed, the Court deems the work performed as reflected in the billing records to be the nature and type that would be expected for a wage-and-hour action such as this one.   The Court's review of the time records did not reveal entries that appeared duplicative or unnecessary.   To the contrary, the case appears to have been litigated efficiently.   Most of the work during the initial year of the case was performed by Faillace, and Mullholland the year following that.   After a year-plus lull in the case between 2018 and 2019, the only two entries are for Tannenbaum.[26]   There are a handful of entries, however, that should not be counted; specifically those for which the task is simply stated to be "status report" without any indication of what the report entailed or to whom it was made.   Those entries should be deducted from the total fees.   Taking into account

---

[26] Several of the billing entries reflect communications between the attorney responsible for the respective billing entry and another attorney at the firm but for which there is no corresponding entry by that latter attorney.   Some Courts have found the lack of parallel entries to be suspect and therefore a reason to deny recovery for the the billing attorney's entries regarding the communications.   In this particular case, the Court does not reach a similar conclusion; rather, the lack of corresponding entries appears to be the result of conservative billing (i.e., not charging for multiple lawyers' time for internal discussions).

the adjustments for Faillace's rate and the insufficient entries, the Court recommends that Defendants pay attorneys' fees in the amount of **$17,714.30**.[27]

## K.    Costs and Disbursements

Awarding costs and disbursements is authorized by the FLSA and the NYLL.  29 U.S.C. § 216(b); NYLL § 198(4).  Such costs should only be awarded, however, when they are tied to "identifiable, out-of-pocket disbursements."  *Jemine v. Dennis*, 901 F. Supp. 2d 365, 394 (E.D.N.Y. 2012); *Castellanos v. Mid Bronx Community Housing Management Corp.*, No. 13 Civ. 3061, 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (same); *Angamarca*, 2012 WL 3578781 at *14 (approving court filing fee and $600 in service of process fees for default judgment in FLSA and NYLL case); *Smith v. Nagai,* No. 10 Civ. 8237, 2012 WL 2421740, at *6 (S.D.N.Y. May 15, 2012) (noting documented costs "are fully compensable under the FLSA"), report and recommendation adopted, 2012 WL 2428929 (S.D.N.Y. June 27, 2012); *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F. Supp. 2d 470, 478 (S.D.N.Y.2009) ("Fee awards include reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (internal quotations omitted); *Ming Hui v. Shorty's Seafood Corp.*, No. 15 CV 7295, 2017 WL 5054401, at *13 (E.D.N.Y. Sept. 6, 2017), report and recommendation adopted, No. 15 CV 7295, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017) (describing court filing fees and service of process fees as "routinely recoverable" in wage-and-hour cases).

---

[27] The billing records reflect that Faillace performed 28.7 hours of work.  At $450 per hour, the total fees attributable to him are $12,915.  At $400 per hour, those fees will be reduced to $11,480, a difference of $1,435.  The insufficient "status report" entries, all of which were recorded by Mulholland, total $595.70.

Plaintiffs' counsel's invoices reflect costs and disbursements in the amount of $905.00 for the Court's filing fee ($400) and for process server fees ($505). (Faillace Decl., Ex. 28 at 5.) The Court finds these costs to be fair and reasonable, and accordingly recommends an award of costs and disbursements in the total amount of **$905.00**.

## L.    Pre-Judgment Interest

Under the FLSA, awards of federal liquidated damages serve as a form of compensatory pre-judgment interest. *See, e.g.*, *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 321 (S.D.N.Y. 2014); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008). For that reason, a plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).

In contrast, liquidated damages under the NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest. *Yu G. Ke,* 595 F. Supp. 2d at 262 (citing *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir.1999)); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted sub nom, *Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) ("The Second Circuit has held that where a plaintiff is awarded liquidated damages under New York Labor Law, pre-judgment interest . . . is appropriate."). Accordingly, Plaintiffs here are eligible to recover pre-judgment interest on their state law claims, the rate for which is nine percent per annum as provided by N.Y. C.P.L.R. § 5001. *See, e.g.*, *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment

interest rate to state law claims); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (same).

"The Court has discretion to choose a reasonable date from which prejudgment interest should accrue." *Junmin Shen v. Number One Fresco Tortillas, Inc.*, No. 15 Civ. 4934, 2018 WL 6712771, at *14 (S.D.N.Y. Nov. 26, 2018) (citing *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016)).  In cases where, as here, multiple periods of employment are involved, courts "often choose the midpoint of the plaintiff's employment within the limitations period." *Junmin Shen*, 2018 WL 6712771 at *14 (citing *Gamero*, 272 F. Supp. 3d at 515 (internal quotation marks omitted)).

Accordingly, Plaintiffs should be awarded pre-judgment interest on their unpaid wage damages (but not on liquidated damages).  For each Plaintiff, interest shall run from the midpoint between the start of the applicable damages period to the date of judgment.

## M.   Plaintiffs' Damages

Plaintiffs are entitled to recover their unpaid wages (including minimum, overtime and spread-of-hours pay), liquidated damages, damages for violations of wage notice requirements, attorneys' fees, costs, and pre-judgment interest.  The Court has reviewed Plaintiff's Revised Damages Schedule and finds it to be accurate, subject to the one correction for Plaintiff Galindo's regular rate of pay as noted earlier.[28]  Based on Plaintiffs' submissions, the applicable legal principles, and the foregoing analysis, the Court has

---

[28] Where Plaintiffs indicated that they worked a range of hours per week, the Revised Damages Schedule uses a midpoint (e.g. 69 for a range of 66-72 per week).  The Court finds that methodology to be reasonable.

determined that damages, fees and cost should be awarded as follows.  No damages are

included for Plaintiffs Rojas or Baltazar for the reasons mentioned earlier.

1. **Raul Saldana Villanueva:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $27,563.25 |
| Liquidated Damages on Minimum and Overtime Wages | $27,000.19 |
| Unpaid Spread of Hours (SOH) Pay | N/A |
| Liquidated Damages on unpaid SOH | N/A |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $59,563.44 |

2. **Andres Zamora Ramirez:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $36,395.00 |
| Liquidated Damages on Minimum and Overtime Wages | $35,791.25 |
| Unpaid Spread of Hours (SOH) Pay | $4,843.50 |
| Liquidated Damages on unpaid SOH | $4,767.38 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $86,797.13 |

3. **Julio Alvarez Vargas:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $49,028.25 |
| Liquidated Damages on Minimum and Overtime Wages | $48,789.00 |

| Unpaid Spread of Hours (SOH) Pay | $12,261.00 |
| Liquidated Damages on unpaid SOH | $12,195.75 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $127,274.00 |

4. **Efrain Rosas:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $31,073.00 |
| Liquidated Damages on Minimum and Overtime Wages | $30,193.25 |
| Unpaid Spread of Hours (SOH) Pay | $7,069.50 |
| Liquidated Damages on unpaid SOH | $6,873.75 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $80,209.50 |

5. **Francisco Rosendo:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $167,767.03 |
| Liquidated Damages on Minimum and Overtime Wages | $162,717.19 |
| Unpaid Spread of Hours (SOH) Pay | $2,356.50 |
| Liquidated Damages on unpaid SOH | $589.13 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $338,429.85 |

**6.  George Sanchez Galindo:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $36,150.00 |
| Liquidated Damages on Minimum and Overtime Wages | $36,150.00 |
| Unpaid Spread of Hours (SOH) Pay | $4,147.50 |
| Liquidated Damages on unpaid SOH | $4,147.50 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $85,595.00 |

**7.  Miguel Cauatle Ocelotl:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $68,887.88 |
| Liquidated Damages on Minimum and Overtime Wages | $67,037.25 |
| Unpaid Spread of Hours (SOH) Pay | $12,033.75 |
| Liquidated Damages on unpaid SOH | $11,707.50 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $164,666.38 |

8. **Esteban Herrera:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $30,800.00 |
| Liquidated Damages on Minimum and Overtime Wages | $30,275.00 |
| Unpaid Spread of Hours (SOH) Pay | N/A |
| Liquidated Damages on unpaid SOH | N/A |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $66,075.00 |

9. **Jesus Herrera:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $251,160.00 |
| Liquidated Damages on Minimum and Overtime Wages | $243,600.00 |
| Unpaid Spread of Hours (SOH) Pay | $15,705.00 |
| Liquidated Damages on unpaid SOH | $15,273.00 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $530,738.00 |

10. **Bladimir Vazquez Solis:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $3,312.50 |
| Liquidated Damages on Minimum and Overtime Wages | $3,312.50 |
| Unpaid Spread of Hours (SOH) Pay | N/A |
| Liquidated Damages on unpaid SOH | N/A |

| | |
|---|---|
| Wage Notice | $5,000.00 |
| Wage Statements | $5,000.00 |
| Total | $16,625.00 |

**11. Dionisio Florencio Perez Marana:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $13,774.00 |
| Liquidated Damages on Minimum and Overtime Wages | $12,838.00 |
| Unpaid Spread of Hours (SOH) Pay | $6,155.25 |
| Liquidated Damages on unpaid SOH | $6,155.25 |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $43,922.50 |

**12. Luis Fernando Tlaltepec-Perez:**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $46,420.00 |
| Liquidated Damages on Minimum and Overtime Wages | $45,250.00 |
| Unpaid Spread of Hours (SOH) Pay | N/A |
| Liquidated Damages on unpaid SOH | N/A |
| Wage Notice | $2,500.00 |
| Wage Statements | $2,500.00 |
| Total | $96,670.00 |

**13. Jose Patricio Sanchez Rojas:**  Nominal damages of $100.

**14. Zeferino Baltazar:** Nominal damages of $100.

**15. Grand Totals**

| Damages Category | Amount |
|---|---|
| Minimum and Overtime Wages | $762,330.91 |
| Liquidated Damages on Minimum and Overtime Wages | $742,953.63 |
| Unpaid Spread of Hours (SOH) Pay | $64,572.00 |
| Liquidated Damages on unpaid SOH | $61,709.26 |
| Wage Notice | $32,500.00 |
| Wage Statements | $32,500.00 |
| Attorney Fees | $19,745.00 |
| Attorney Costs | $905.00 |
| Total | $1,717,215.80 |

## Conclusion

For the foregoing reasons, I recommend awarding Plaintiffs damages, fees and costs in the amounts set forth above against the defaulting defendants. I also recommend that the Clerk of Court assess pre-judgment interest using the mid-point date method, and that Plaintiff's counsel coordinate with the Clerk of Court to provide the requisite mid-point information and otherwise assist in calculation of pre-judgment interest for each Plaintiff.

## Procedures for Filing Objections

Pursuant to 28 U.S.C. §§ 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Alison J. Nathan, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, 500

43

Pearl Street, New York, New York 10007. **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN WAIVER AND PRECLUDE APPELLATE REVIEW.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:        September 3, 2020
              New York, New York

Copies transmitted to all counsel of record and mailed to:

179 Third Avenue Rest Inc.
(d/b/a Mumbles)
179 Third Avenue
New York, New York 10003

603 Second Avenue Corp.
(d/b/a Benjamin's Restaurant & Bar)
603 Second Avenue
New York, New York 10016